IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NISSAN MOTOR ACCEPTANCE COMPANY LLC, a Delaware limited liability company, and NISSAN EXTENDED SERVICES NORTH AMERICA, GP, a Delaware general Partnership, | § § § § § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:23-cv-2636-E |
| STEPHANIE MORRIS, an individual, | § § § | |
| Defendant. | § § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Nissan Motor Acceptance Company LLC ("NMAC") and Nissan Extended Services North America GP ("NESNA") filed a motion for default judgment against Stephanie Morris. *See* Dkt. No. 13.

United States District Judge Ada Brown has referred this motion to the undersigned United States Magistrate Judge for hearing, if necessary, and findings, conclusions, and a recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 14.

## Background

This case concerns breaches of contracts. Stephanie Morris is a guarantor of loans from NMAC and NESNA to two automobile dealerships – Stephanie Morris Nissan, LLC located in Sedalia, Missouri, ("Sedalia Dealership") and Stephanie

Morris Nissan of Durango, LLC, located in Durango, Colorado ("Durango Dealership"). *See* Dkt. No. 1 at 1.

NMAC provides floor plan financing, where it loans money to dealerships for the purchase of new or used vehicles. When the vehicles are sold, the dealer must pay the loan back to NMAC. *See id.* at 3. Both the Durango Dealership and the Sedalia Dealership entered into Automotive Wholesale Financing and Security Agreements and Nissan Retail Environmental Design Initiative Sign Program – Lease and Maintenance Agreements with NMAC. *See id.* at 4-5. The Sign Lease Agreement contains a cross-default provision. Dkt. No. 13 at 5. The Durango Dealership entered into a Capital Loan and Security Agreement, Lease Financing and Security Agreement, and a real estate loan agreement, which all include cross-default provisions, with NMAC. *See* Dkt. No. 1 at 6-7. Morris and the Dealerships also entered into Cross-Guaranty, Cross-Collateral, and Cross-Default Agreement ("Cross Agreement") and Continuing Guaranty Agreements with NMAC. *See id.* at 8. The Durango Dealership also entered into a Security+Plus Management Fee Advance Agreement and Dealer Agreement ("NESNA Guaranty") with NESNA, under which NESNA gave the Durango Dealership $627,000. *See id.* at 9.

NMAC conducted an inventory of the Dealerships and allege that the Dealerships sold vehicles "SOT" (sold out of trust), meaning without paying back the loan to NMAC, as required under the Wholesale Agreement. *See id.* at 8-10.

"NMAC filed a lawsuit in La Plata County District Court titled Nissan Motor Acceptance Company LLC v. Stephanie Morris Nissan of Durango, LLC, Case [No.] 2023cv30126", which granted them possession of the Durango Dealership. *Id.* at 10.

NMAC brings claims for breach of the Cross Agreement, breach of the Sedalia Guaranty Agreement, and breach of the Durango Guaranty Agreement and NESNA brings a claim for breach of the NESNA Guaranty in the complaint. *See* Dkt. No. 1 at 11-16.

Plaintiffs contend that they served Stephanie Morris on December 8, 2023. *See* Dkt. No. 10.

Morris did not file an answer within 21 days. The Plaintiffs requested and the clerk issued an entry of default as to Stephanie Morris on January 2, 2024. *See* Dkt. Nos. 11 & 12.

The Plaintiffs filed the Motion for Default Judgment on January 5, 2024. *See* Dkt. No. 13. In their Motion for Default Judgment, NMAC contends that Morris owes it $10,722,683.71, and NESNA claims Morris owes it $642,762. *See* Dkt. No. 13 at 10. The Plaintiffs "request a judgment against Morris for $10,722,683.71 (in favor of NMAC) and $642,726 (in favor of NESNA)." *Id.* at 14.

### Legal Standard

Federal Rule of Civil Procedure 55(b)(2) governs applications to the Court for default judgment. *See* FED. R. CIV. P. 55(b)(2).

> In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *See New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996). A default

occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See id.* The clerk will enter default when default is established by an affidavit or otherwise. *See id.* After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on such default. *See id.*

The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *See Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). But this policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers,* 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan,* 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

*Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013).

A plaintiff seeking a default judgment must establish: (1) that the defendant has been served with the summons and complaint and that default was entered for its failure to appear; (2) that the defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See id.* at *2-*3. The plaintiff must also make a *prima facie* showing there is "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

Before entering a default judgment, a court should consider any relevant factors. Those factors may include "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *Arch Ins. Co.*, 2013 WL 145502, at *3 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The Court should also consider whether the defendant has a meritorious defense to the complaint. *See id.* Further, "a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Lindsey,* 161 F.3d at 893.

An entry of default "does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States of Am. For Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (cleaned up); *cf. Jackson v. FIE Corp.*, 302 F.3d 515, 524-31 (5th Cir. 2002) (holding that jurisdictional allegations and findings supporting a default judgment are not entitled to preclusive effect in the personal-jurisdiction context of Federal Rule of Civil Procedure 60(b)(4)). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (cleaned up).

## Analysis

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply*, *Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001) (cleaned up). And, so, the Court must first examine whether it properly has jurisdiction over the case.

Plaintiffs filed their complaint in this Court on the basis of diversity jurisdiction. *See* Dkt. No. 1 at 2. They allege that Morris is a citizen of Texas and

> NMAC is a Delaware limited liability company with a principal place of business at One Nissan Way, Franklin, TN 37067. NMAC was formerly known as Nissan Motor Acceptance Corporation, a California corporation. Nissan Motor Acceptance Corporation converted to Nissan Motor Acceptance Company LLC on April 1, 2021. Nissan North America, Inc. ("NNA") is the sole member of NMAC. NNA is a Delaware corporation with a principal place of business at One Nissan Way, Franklin, TN 37067. For jurisdictional purposes, NMAC is a citizen of Delaware and Tennessee.
>     NESNA is a Delaware general partnership company with a principal place of business at One Nissan Way, Franklin, TN 37067. NESNA's members are Nissan Global Reinsurance, Ltd., a Bermuda company, and NGRe Trust, a DE statutory trust. Nissan Global Reinsurance, Ltd. is the beneficiary of NGRe Trust. For jurisdictional purposes, NESNA is a citizen of Delaware and Bermuda.

*Id.*

While the Plaintiffs have properly alleged the citizenship of NMAC, they have not properly alleged the citizenship NESNA.

"For the purpose of diversity jurisdiction, the citizenship of a partnership is determined by reference to the citizenship of each of its partners." *Int'l Paper Co. v. Denkmann Assocs.*, 116 F.3d 134, 137 (5th Cir. 1997). And "[t]he burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Essex*

*Ins. Co. v. Valdez*, No. CIVA SA-07-CV-072-XR, 2007 WL 1438667, at *1 (W.D. Tex. May 1, 2007).

NESNA alleges that it is a general partnership and Nissan Global Insurance, Ltd., and NGRe Trust are its members. *See* Dkt. No. 1 at 2.

If Nissan Global Reinsurance, Ltd., described as a "Bermuda company," is a corporation, then it is "a citizen of every State and foreign state by which it has been incorporated and [a citizen] of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Defendants have not alleged the principal place of business of Nissan Global Reinsurance, Ltd. *See generally Ann v. Lone Star Fund IV (U.S.), L.P.*, No. 3:22-cv-1734-N-BH, 2023 WL 5727317, at *6 (N.D. Tex. Aug. 22, 2023), *rep. & rec. adopted*, 2023 WL 5725538 (N.D. Tex. Sept. 5, 2023) ("Defendants cite *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 582–83 (7th Cir. 2003), for the proposition that 'Bermuda limited companies are considered 'equivalent in all legally material respects to a corporation under state law,' and thus are 'citizens' of both their places of organization and their principal places of business.' Even assuming, without deciding, that the Seventh Circuit's decision in *Lear Corp.* should be applied here, the declaration does not identify the location of General Partner's GP's principal place of business[.] Nor does it state from where General Partner's GP operates its business. *See* [*Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters Corp.*, 506 F.2d 757, 757-58 (5th Cir. 1975)] (characterizing a limited company 'incorporated in and *operat[ing] its business from Bermuda*' as an 'alien' for purposes of § 1332(a) (emphasis added)).) (some internal citations omitted).

If Nissan Global Reinsurance, Ltd., is a limited partnership, then its citizenship "is based upon the citizenship of each of its partner." *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990)). Defendants have not alleged Nissan Global Reinsurance, Ltd.'s partners or their citizenship. *See generally Ann*, 2023 WL 5727317, at *5 ("Counsel's declaration states that its general partner, General Partner, 'is an exempted limited partnership organized under the laws of Bermuda.' Notably, Counsel's declaration does not state whether Partnership has any partners other than General Partner, identify any other partners, or provide any other information from which their citizenship may be determined. In *Carden*, the Supreme Court 'rejected the argument that only general partners, and not limited partners, of limited partnerships should be considered in determining citizenship'. *See* [*Magnolia Mgmt. Corp. v. Quest Rescue Partners-8, L.P.*, 792 F. Supp. 45, 48 (S.D. Miss. May 4, 1992)]." (cleaned up)).

If Nissan Global Reinsurance, Ltd., is a limited liability company, then its citizenship "is determined by the citizenship of all of its members." *See Harvey*, 542 F.3d at 1080. Defendants have not alleged Nissan Global Reinsurance, Ltd.'s members or their citizenship.

NESNA also alleges that NGRe Trust is a "DE statutory trust" and that "Nissan Global Reinsurance, Ltd. is the beneficiary of NGRe Trust." Dkt. No. 1 at 2. A "Delaware statutory business trust … is an unincorporated association. DEL. CODE. ANN. TIT. 12 § 3081(i)." *Dawson v. Wal-Mart Stores, Inc.*, No. 4:23-CV-458-SDJ, 2023

WL 4303639, at *3 (E.D. Tex. June 30, 2023). "The citizenship of such a business trust may be based on that of its members/shareholders." *Raines v. Boone*, No. 22-CV-017, 2023 WL 4397715, at *1 (W.D. La. June 15, 2023), *rep. & rec. adopted*, 2023 WL 4378182 (W.D. La. July 6, 2023) (discussing the differences between the citizenship of statutory trusts and the citizenship of traditional trusts).

If Nissan Global Reinsurance, Ltd. is the only member of the NGRe Trust, then because Defendants have not properly alleged the citizenship of Nissan Global Reinsurance, Ltd., they have also not properly alleged the citizenship of the NGRe Trust.

Because the Defendants have not properly alleged citizenship, the Court cannot determine whether diversity jurisdiction exists. *See, e.g.*, *Essex Ins. Co. v. Valdez*, No. CIVA SA-07-CV-072-XR, 2007 WL 1438667, at *2 (W.D. Tex. May 1, 2007).

And, so, the Court should deny the Motion for Default Judgment without prejudice.

## Recommendation

The Court should deny the Motion for Default Judgment [Dkt. No. 13] without prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 6, 2024

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE